AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States District Court
Southern District of Texas
FILED

MAY - 2 2011

David J. Bradley, Clerk

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Josue Arturo PANIAGUA Herrera | ) | Case No. M-11-0901-M |
| 1985 | ) | |
| Mexico | ) | |
| Defendant(s) | ) | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __April 30, 2011__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC 841 | Possession With Intent to Distribute Heroin (Approx 8.42 kilograms) |

This criminal complaint is based on these facts:

On April 30, 2011 at approximately 8:11 PM, Josue Arturo PANIAGUA Herrera applied for admission to the United States at the Hidalgo, Texas Port of Entry driving a 2008 Toyota Rav-4 displaying Mexican plate number JJG7420. PANIAGUA stated to Customs and Border Protection Officers that he was on his way to Chicago for a few days and wished to apply for a permit that would allow his to do so.

☑ Continued on the attached sheet.

Approved k Lt.
AUSA
5-2-11

*Complainant's signature*

Michael A. Blackwood   Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __05/02/2011__

*Judge's signature*

City and state: __McAllen, Texas__

Dorina Ramos, U.S. Magistrate Judge
*Printed name and title*

## Attachment "A"

PANIAGUA further stated that he worked for the Mexican government and produced identification to substantiate that claim. PANIAGUA gave officers a negative declaration for weapons, narcotics and any monetary instrument in excess of $10,000USD. He further stated that he had owned the vehicle he was driving for about one year. CBP officers noticed that PANIAGUA did not have what appeared to be enough clothes to go on a trip for the amount of time that he had stated (ten days). After an inspection of the vehicle, CPB officers were still not satisfied that PANIAGUA was coming to the U.S. for legitimate reasons. At this time, the vehicle was referred for an X-ray inspection. During this procedure, an anomaly was spotted under the rear seating area of the vehicle. The use of a probe in that area by officers revealed a powdery substance which field tested positive for heroin. PANIAGUA was detained and Immigration and Customs Enforcement Agents were called to the port.

At approximately 10:30 PM ICE Special Agent Michael Blackwood of the McAllen, Texas ICE office, arrived at the Hidalgo Port of Entry. Special Agent Nathan Stoltz arrived shortly after. After a preliminary investigation regarding the vehicle and questioning of the officers involved, the agents began an interview with PANIAGUA, assisted by CBPO Camarillo, who acted as an interpreter. PANIAGUA was read his Miranda rights and agreed to speak with officers.

PANIAGUA claimed to have last been in the United States about a month ago, driving the same vehicle, which he claimed to be his. CBP record checks showed that the vehicle had not been to the United States before. He claimed that the vehicle had been in his possession since he had bought it and that nobody else had ever driven it. He further claimed that he was on his way to Chicago for a vacation. PANIAGUA claimed that he did not know why he was being detained. When advised that drugs had been found in his vehicle, he did not seem surprised. He stated that he thought he had been detained because of a permit he had forgotten to turn in and further stated that he had never been associated with anyone involved in drug smuggling. When advised about the gravity of the charge that he was facing, he invoked his right to remain silent and asked to speak to an

attorney. At that time the interview was ended and he was returned to the holding cell. A few minutes later, he advised CBP officers that he wanted to speak with agents again. At that time he was read his rights again and the interview continued.

PANIAGUA now claimed that a person that he knows only by "Lalo" had asked him to cross the vehicle into the United States. He claimed that he had been introduced to Lalo by a friend in January and that Lalo had been looking for individuals who had documents that would allow them to cross into the United States legally. He claimed that Lalo offered him $10,000USD to bring the car across on a previous occasion and that he said no because he assumed that the vehicle would contain something illegal. According to PANIAGUA, a few weeks later, Lalo went to his place of employment to again propose that PANIAGUA take the vehicle across. This time, Lalo had with him pictures of PANIAGUA'S wife and two children. Lalo stated to PANIAGUA that if he would not do the venture for money, perhaps he would do it for his family. To PANIAGUA, this seemingly implied that Lalo was threatening to harm his family if he did not comply. Because of this, he felt that he had no choice but to comply. The vehicle was placed in his name shortly after. PANIAGUA stated that he was to be telephonically instructed as to where to go after he had crossed into the United States.

PANIAGUA ended by stating that he was to be paid $10,000USD to bring the vehicle to Ohio and told officers that if they knew how things were in Mexico, that they would understand why he did it. The total weight of the heroin was approximately 8.42 kilograms.

AUSA Juan Alaniz was contacted and approved prosecution.